USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/03/2026

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

DAVID BREITLING,

　　　　　　　　　　　　Plaintiff,

v.

　　　　　　　　　　　　　　　　　　　Case No. 24-cv-4704

AMAZON WEB SERVICES, and RANDY BRADLEY,

　　　　　　　　　　　　Defendants.

### MEMORANDUM ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SETTING CASE FOR TRIAL

McMahon, J.:

Plaintiff David Breitling ("Breitling" or "Plaintiff") brought suit on June 20, 2024, alleging that Amazon Web Services ("AWS" or "Defendant") and Breitling's former supervisor, Ralph ("Randy") Bradley ("Bradley" or "Defendant"), discriminated against him because of his Chilean national origin and retaliated against him for lodging an internal complaint against Bradley. Breitling claims that these actions violated the New York State Human Rights Law ("NYSHRL"), NY. Exec. L. § 290 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 et seq. Dkt. No. 1, ¶ 6. Breitling asserts no federal discrimination claim; jurisdiction is predicated on diversity of citizenship.

Defendants deny Breitling's allegations. They maintain that (i) Plaintiff fails to make out a prima facie case of either discrimination or retaliation, because the actions to which he points are variously "not adverse employment actions and/or are wholly untethered to any inference of discrimination," and (ii) Plaintiff was fired for poor performance, and he fails to demonstrate that this reason was pretextual, or that his national origin "played any role" in the adverse employment actions. Dkt. No. 38, at 12, 16.

1

Defendants have moved for summary judgment, Dkt. No. 38. Plaintiff opposes.

The motion for summary judgment is **DENIED**. The case will be set for an immediate trial.

### Legal Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court's role is "not to resolve disputed questions of fact but solely to determine whether, as to any material fact, there is a genuine issue to be tried." *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 227 (2d Cir. 2024).

Following legislative amendments to the NYSHRL in 2019, "courts analyze NYSHRL claims under the less demanding standard of the NYCHRL." *Baker v. Bridge Inc.*, 805 F.Supp.3d 521, 547 (S.D.N.Y. Sept. 30, 2025); *see McHenry v. Fox News Network, LLC*, 510 F.Supp.3d 51, 68 (S.D.N.Y. Dec. 18, 2020) ("[T]he NYSHRL was amended to direct courts to construe the NYSHRL, like the NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof.'") (quoting N.Y. Exec. Law § 300). Accordingly, for purposes of this motion, Breitling's NYSHRL and NYCHRL claims will be analyzed together. *See Baker*, 805 F.Supp.3d at 547; N.Y. Exec. Law § 300.

Employment discrimination claims under the NYSHRL and NYCHRL are analyzed under the *McDonnell Douglas* burden-shifting framework. *Forrest v. Jewish Guild for the Blind*,

3 N.Y.3d 295 (2004); *Hamburg v. New York Univ. Sch. of Med.*, 155 A.D.3d 66 (1st Dep't 2017); *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 (2d Cir. 2025).

The first step of the framework requires the plaintiff to establish a prima facie case of discrimination. *See Littlejohn v. City of New York*, 795 F.3d 297, 315-16 (2d Cir. 2015). To establish a prima facie case of discrimination on the basis of national origin, a plaintiff must show that (1) the plaintiff is a member of a protected class, (2) the plaintiff was qualified to hold the position, (3) the plaintiff suffered an adverse employment action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232–33 (S.D.N.Y. 2021).

If the plaintiff sufficiently makes a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. If the employer satisfied its burden, the plaintiff must then show that the reasons presented were pretextual. *Littlejohn*, 795 F.3d at 307; *Hamburg v. New York Univ. Sch. of Med.*, 155 A.D.3d 66, 73 (1st Dep't Sept. 26, 2017); *Osinoff v. Nuvance Health*, No. 22-CV-2017, 2024 WL 967190, at *8 (S.D.N.Y. Mar. 5, 2024). Under the NYCHRL, unlawful discrimination must play "no role" in an employment decision. *Singh v. Covenant Aviation Sec., LLC*, 131 A.D.3d 1158, 1161 (2d Dep't 2015). To prevail on summary judgment, a defendant must make "a prima facie showing that there is no evidentiary route that could allow a jury to believe that discrimination played a role in their challenged actions." *Cenzon-Decarlo v Mount Sinai Hosp.*, 101 A.D.3d 924, 927 (2d Dep't 2012); *see Moise v Uptown Communications & Elec., Inc.*, 134 A.D.3d 782, 783 (2d Dep't 2015).

## Discussion

### I.    Discrimination Claims

Breitling has satisfied the first three elements of his prima facie discrimination claim: (1) he is Chilean, and therefore a member of a protected group; (2) he was employed continuously from at least September 19, 2022, until being fired on June 28, 2024, demonstrating that he was qualified for the position he held; and (3) he was fired from AWS by Bradley. Dkt. No. 1 ¶ 1; Dkt. No. 39 ¶¶ 6, 70. *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232–33 (S.D.N.Y. 2021).

Breitling has raised a genuine issue of material fact regarding whether the circumstances of his termination support an inference of discrimination. Breitling offered evidence that Bradley – who made the decision to fire him from AWS – made a series of discriminatory comments during the period while he was Breitling' supervisor and was evaluating Breitling's performance.[1] Dkt. No. 49 ¶ 12. These include comments about Breitling's accent being too difficult for Bradley to understand and that "being argumentative is part of your culture." *Id.* ¶¶ 12–13, 15; Dkt. No. 50-2, Holmes Tr. 22:1–9.

Additionally, Breitling offered evidence that during a meeting on February 21, 2024, Bradley made the following comment to Breitling: "The problem, David, is that English is not your first language. You have skill gaps in writing and communication. The writing course didn't help. Have you thought about returning to Latin America?" Dkt. No. 49-4; Dkt. No. 45, at 6–7.

The evidence shows that Breitling moved to New York in 1978, graduated from Harpur College at Binghamton University in 1981, and earned his MBA from Columbia University in

---

[1] Defendants concede Plaintiff's allegations concerning these comments to be true for purposes of this motion, Dkt. No. 38, at 8 n.3; Dkt. No. 39 ¶ 92 n.2.

4

1987. Dkt. No. 50-5, Breitling Tr. 59:19–61:7. He has lived in the United States continuously since 1978, except for one year, in 1983, when he was in Paris conducting neurological research at the French Academy of Sciences. *Id.* A trier of fact could fairly infer that Breitling speaks and writes impeccable English – or at least English that is good enough to warrant employment at Amazon.

Breitling also offered evidence from which a reasonable jury could conclude that he was treated less favorably than a similarly situated peers outside his protected class. One identified comparator, Jen Holmes, is an American woman. She served as an L7 GTM specialist on the same team, reported to Bradley, and was subject to the same performance evaluation and discipline standards. Despite being placed on "Focus" (the first level of performance improvement plan at AWS) for similar reasons as Breitling – including the quality of her "Amazon Writing" – Holmes was not required to take an "Amazon Writing" course, which Bradley required of Breitling. Dkt. No. 39 ¶ 34; Dkt. No. 50-4, Tr. 18:7--21:4. Breitling also offered evidence that another colleague, Chris Taylor, an American male, was installed as "co-head" of GTM Banking while Breitling's responsibilities were shrinking. Taylor was ultimately promoted to Head of GTM upon Breitling's departure and Bradley's promotion. Dkt. No. 50-5, Breitling Tr. 200:16–201:6; Dkt. No. 50-4, Bradley Tr. 77:3–78:6.

While Defendants have satisfied their burden by offering a legitimate, nondiscriminatory reason for firing Breitling – poor performance, see Dkt. No. 38, at 14–15 – Breitling's evidence raises genuine issues of material fact sufficient to defeat summary judgment on the question of pretext. The record contains ample evidence from which a reasonable jury could conclude either that Defendants' proffered reasons were pretextual, or that discrimination played some role in the adverse employment actions he experienced, even if performance concerns also played a role. In

addition to the evidence discussed above, Breitling offered evidence about: (1) Bradley's inquiry to HR about whether he could bypass the normal performance improvement procedure (i.e., moving Breitling from "Focus" to "Pivot") in order to fire Plaintiff; *see* Dkt. No. 49 ¶ 29; Dkt. No. 49-6. (2) Bradley's undermining Breitling's ability to satisfy the goals of his Pivot plan. *See, e.g.*, Dkt. 50-3, Bradley Tr. 53:23–61:25, 63: 7–65:3, 91:8–96:24, 105:6–114:19, 115:6–118:9, 129:5–132:21, 137:4–146:23, 158:5–13, 159:1–11, 166:24–167:21; Dkt. No. 41-6, at 4; Dkt. No. 50-5, Breitling Tr. 49:13–22; Dkt. No. 42-6, at 4; and (3) The inconsistencies and shifting explanations offered by Defendants to justify Breitling's termination. *See e.g.*, Dkt. No. 50-1, at 4; Dkt. No. 42-6, at 4; Dkt. No. 50-5, Breitling Tr. 223:15–224:8; Dkt. No. 38, at 13, 14, 17; Dkt. No. 50-3, Bradley Tr. 65:4–66:2, 132:22–136:20, 149:2–154:2. The court is not bothering to identify all of the evidence that raises genuine issues of fact; this is sufficient to establish that the Defendants are not entitled to dismissal of the case in advance of trial.

Therefore, Defendants' motion for summary judgment on Breitling's discrimination claims is **DENIED**.

## II.    Retaliation Claims

To make out a prima facie case of retaliation under the NYSHRL and NYCHRL, a plaintiff must show that: "(1) he engaged in a protected activity; (ii) her employer was aware of this activity; (iii) his employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity; and (iv) a causal connection exists between the alleged adverse action and the protected activity." *See Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 53 (2d Cir. 2025). "The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001).

6

To establish its entitlement to summary judgment in a retaliation case under either the NYSHRL or NYCHRL, "a defendant must demonstrate that the plaintiff cannot make out a prima facie claim of retaliation or. having offered legitimate, nonretaliatory reasons for the challenged actions, that there exists no triable issue of fact as to whether the defendant's explanations were pretextual." *Reichman v. City of New York*, 179 A.D.3d 1115, 1119-20 (2d Dep't 2020) (citations omitted); *Forbes v. Tri-Cnty. Care, LLC*, No. 21-Civ.-01366, 2025 WL 743945, at *10 (S.D.N.Y. Mar. 7, 2025).

Breitling engaged in protected activity when he complained to AWS Human Resources about Bradley's conduct. On January 31, 2024, Breitling filed his first HR complaint against Bradley, alleging a hostile work environment, contradictory instructions, and demeaning treatment. Dkt. No 41-1. Although the written complaint did not explicitly use the phrase "national origin discrimination," Breitling testified that he told Gabriela Katsulis in HR about Bradley's comments concerning his accent and language skills during a Chime meeting about the complaint. Dkt. No. 50-5, Breitling Tr. 123:21–125:5. Moreover, on March 23, 2024, Breitling filed a second HR complaint explicitly alleging national origin discrimination and detailing Bradley's discriminatory comments from the February 21, 2024 meeting. Dkt. No. 34, at 14; Dkt. No. 49-4. On April 2, 2024, Breitling followed up with a formal ethics violation report, reiterating his discrimination complaint and challenging his Pivot placement. Dkt. No. 49-6. These complaints are undoubtedly protected activity.

The record establishes that Bradley was aware of Breitling's complaints, including allegations concerning accent-related remarks. Bradley testified that HR contacted him in late February 2024, scheduled a Chime meeting, and discussed "things [he] might have said" about Breitling's accent, including whether Breitling's accent was "an issue" for him or whether he had

made comments about it. Dkt. No. 50-4, Bradley Tr. 41–46, 43:11–16. This testimony confirms that Bradley was on notice that Breitling had raised concerns about his comments.

In addition to firing Breitling, Bradley's decision to place Breitling on Pivot (the second level of performance improvement plan at AWS) is conduct reasonably likely to deter a person from engaging in that protected activity, because it ultimately served as the justification for his firing. *Sanders v. New York City Hum. Res. Admin.*, 361 F.3d 749, 756 (2d Cir. 2004); *Cherry v. New York City Hous. Auth.*, 564 F. Supp. 3d 140, 170 (E.D.N.Y. 2021); *Cobb v. Ellab Inc.*, No. 22-Civ-1002, 2024 WL 1963430, at *9 (N.D.N.Y. May 2, 2024). The timing of Bradley's Pivot discussions with HR gives rise to a triable inference of improper motive. *Cifra*, 252 F.3d at 217 (2d Cir. 2001). Bradley testified that he began consulting HR about placing Breitling on Pivot in "early February," during the Focus period, and acknowledged that HR's communication with him about Breitling's allegations occurred "later in February." Dkt. No. 50-4, Bradley Tr. 44:16–19, 46:3–7. Bradley also testified that Breitling had been assigned six to eight new priority accounts in "mid-January, early February." *Id.* at 92:7–11. Thus, if Bradley began contemplating Pivot before learning of the January 31, 2024 complaint, then he had already determined Breitling's performance was deficient as soon as Breitling received the new priority accounts following the January 2024 reorganization.

Moreover, Bradley's credibility is highly relevant to a trier of fact's assessment of this issue. Evidence shows that, between February 22 and February 26, HR personnel at AWS were actively discussing whether Bradley required "coaching" and whether he should be interviewed about Breitling's allegations. *Id.* One day later, on February 27, Bradley submitted the Pivot proposal. Dkt. No. 42-5. Either way, the record permits a reasonable jury to conclude that the Pivot decision was made either prematurely – before Breitling had a fair opportunity to succeed

8

in his newly assigned role – or in close temporal proximity to, and potentially in response to, his protected complaints.

Accordingly, the Court finds that Breitling has established a prima facie case of retaliation.

Defendants proffer Breitling's poor performance as the reason for Bradley's conduct. Dkt. No. 38, at 14–15. But again, Breitling has raised a triable issue of fact as to whether Bradley's retaliatory motive played a role in Breitling's Pivot plan and termination. In addition to the evidence discussed above, evidence suggestive of a retaliatory motive that includes, but is not limited to: (1) Bradley's decision to reach out to Charith Mendis, the Head of Marketing Development, to discuss recruiting a replacement for Breitling the day before Bradley informed Breitling that he would be placed on Pivot. Dkt. No. 50-4, Bradley Tr. 85:14–88:8; Dkt. No. 49-6. (2) Bradley's April 2, 2024, request to terminate Breitling without completing Pivot, a request Bradley made this request one day after Breitling filed his ethics complaint. Dkt. No. 49-6. (3) Bradley's negative feedback in Breitling's annual performance review, which included contradicts the stated reasons for his termination and was shared six days after Breitling's March 23, 2024 HR complaint expressly alleging national origin discrimination. Dkt. No. 50-1, at 4; Dkt. No. 34, at 14.

Accordingly, Defendants' motion for summary judgment on Breitling's retaliation claims is also **DENIED.**

## SCHEDULING ORDER

We will select a jury and try this case on May 11, 2025. The parties must file a final pretrial order, which identifies all witnesses who are being called to testify and all exhibits that

9

are being offered into evidence, by April 10. *In limine* motions, if any, and proposed voir dire questions are due on the same day. Objections to the introduction of exhibits and responses to in limine motions are due by April 17. This order overrides anything to the contrary in the parties' Case Management Plan.

We will hold a final pretrial conference on April 30, 2026, at 10 AM in courtroom 24A at the Moynihan Courthouse, 500 Pearl Street. At that conference the court will rule on all objections to exhibits and will admit all proposed exhibits into evidence. I warn the parties that "pro forma" objections to the introduction of exhibits on multiple grounds that are not tethered to reality will be dealt with harshly; after overruling such objections four or five times I generally presume that all subsequent objections of the same nature are propounded in bad faith and will simply overrule them. Plan to be present in court all day if necessary to deal with objections to exhibits, as it is my practice to deal with all such objections at the final pretrial conference.

## CONCLUSION

This constitutes the decision and order of the court. It is a written decision denying a motion for summary judgment. The Clerk is directed to remove the motion at Dkt. No. 38 from the Court's list of open motions.

Dated: March 23, 2026

U.S.D.J.

BY ECF TO ALL COUNSEL